UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BILLY EARL EWING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 15 C 8462 |
| v. | ) | |
| | ) | Judge Charles P. Kocoras |
| ARTHUR I. DAVIDA, MARY DIANE | ) | |
| SCHWARZ, EVARISTO AGUINALDO, | ) | |
| ARTHUR FUNK, KRISTINA | ) | |
| KASHIRSKY, and WEXFORD HEALTH | ) | |
| SOURCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants Arthur I. Davida ("Davida"), Mary Diane Schwarz ("Schwarz"), Evaristo Aguinaldo ("Aguinaldo"), Arthur Funk ("Funk"), Kristina Kashirsky ("Kashirsky"), and Wexford Health Sources, Inc.'s ("Wexford") (collectively, "Defendants") Motion for Summary Judgment ("Motion") against Plaintiff Billy Early Ewing ("Ewing") pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants Defendants' Motion.

## PROCEDURAL HISTORY AND LEGAL STANDARD

This Motion was originally characterized by Defendants as a motion to dismiss Ewing's Third Amended Complaint ("TAC") for failure to state a claim. In their initial filing, Defendants supplied the Court with five exhibits not directly addressed in Ewing's TAC. The Court converted Defendants' 12(b)(6) motion into a motion for

summary judgment – a move anticipated by Defendants in their brief. After the Court extended to Ewing a period of time in which to conduct discovery before responding, Ewing filed a response to summary judgment replete with evidentiary exhibits, and Defendants submitted limited additional evidence to the Court following Ewing's response.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255. However, "if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in [his] favor on a material question, then the court *must* enter summary judgment against [him]." *Waldrigdge v. American Hoecsht Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

### STATEMENT

On August 8, 2014, Ewing underwent surgery to repair a triple jaw fracture at Cook County Hospital. On August 9, he was released into Stateville Correctional Center's ("Stateville") custody in Joliet, Illinois, where he was an inmate for all times relevant to this lawsuit. Shortly upon returning to Stateville, Ewing states that his gums were bleeding, he had difficulty chewing the food he was being served, and he

complained of intense jaw pain. Despite receiving written instructions to return to Cook County Hospital on August 19, 2014 for a follow-up appointment, Ewing did not again return to the hospital until October 7, 2014.

Between August 9 and October 1, Ewing was instead examined at various times by four of the defendants at Stateville: Dr. Davida, a then-licensed physician at Stateville; Dr. Aguinaldo, a licensed physician at Stateville; Schwarz, P.A., a physician's assistant employed by Wexford at Stateville; and Kashirsky, R.N., a registered nurse employed by Wexford at Stateville. During this period, Ewing claims that Davida, Aguinaldo, Schwarz, and Kashirsky were all made aware of Ewing's jaw pain, recent surgery, and need for a follow-up exam at Cook County Hospital. Ewing claims that they each indicated that a soft diet was medically necessary, but none ordered the soft diet or ensured that Ewing received such a diet. This despite each of the above-named employees' authority to order such medical accommodations.

Ewing also claims that Dr. Funk, Wexford's then-Regional Medical Director for the Northern Illinois region, which included Stateville, learned of Ewing's difficulties and decided unilaterally that Ewing did not need to be taken to Cook County Hospital for his scheduled follow-up. Funk made this decision without ever personally examining Ewing.

Following his October 7 appointment, Ewing attended four more follow-ups at Cook County Hospital: on November 4, 2014; on February 26, 2015; on July 28, 2015; and on August 24, 2015. Each appointment, including that of October 7, was

attended by a different outside physician who generated a report following the screening. The reports suggest that at no time was Ewing's jaw susceptible to infection, suffering from pain unrelated to the surgery itself, or healing improperly. The July 28 appointment called "for further evaluation of the healing of the fracture" via a CT scan. The subsequent August 24 appointment confirmed that the CT scan showed "no significant findings" and that Ewing's fracture was "well reduced." The final appointment also revealed that "no treatment is needed at that time."

Ewing alleges three 42 U.S.C. § 1983 counts of deliberate indifference to a serious medical condition in violation of his Eighth and Fourteenth Amendment rights. Ewing grounds his causes of action in the contention that his "jaw did not properly heal and he experienced and continues to experience pain, stress, and emotional distress and anxiety." In order to sustain a § 1983 action for deliberate indifference to a serious medical condition, Ewing must show that: (i) he had an objectively serious medical condition; (ii) the Defendants knew of the condition and were deliberately indifferent to treating Ewing; and (iii) this indifference caused Ewing some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Defendants confine their Motion to the narrow issue of the third prong, whether Ewing in fact sustained an injury caused by Defendants' indifference.

The Court recognizes two possible injuries suggested by Ewing's TAC and supporting evidence that could buoy his § 1983 claim: (i) an improperly healed jaw

4

that continues to cause Ewing pain and suffering; and (ii) pain and suffering Ewing experienced during the August 9 to October 7 interval.

The record provides no factual basis upon which to conclude that Ewing's jaw healed improperly. It is similarly devoid of evidence of Ewing's continued pain and suffering. Ewing's contention that his jaw healed improperly appears to have been an empty allegation of his TAC unsupported by the facts. Likely recognizing this, Ewing confines his response to discussion of the second source of potential injury – pain endured between August 9 and October 1 – to which we turn our attention.

"A delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim, so long as the medical condition is 'sufficiently serious or painful.'" *Grieveson v. Anderson*, 38 F.3d 763, 779 (7th Cir. 2008) (internal citations omitted). "However, the action will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009).

Ewing has plainly failed to meet this burden. Attempting to establish both the seriousness of his post-op pain and the causal relationship between the pain and the delay in returning to Cook County Hospital, Ewing relies exclusively on the deposition testimony of Funk – a Wexford executive who testified that he likely never saw Ewing in-person and that he lacked firsthand knowledge of Ewing's condition. Funk merely testified to his own interpretations of various medical reports that

different named defendants filled out regarding Ewing. However, "evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him." *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

Here, Funk's deposition is anything but helpful to a factfinder. Ewing suggests that notations on the reports of "soft diet" indicate a recognition on Defendants' part that Ewing needed a soft diet, declined to give him one, and therefore Ewing suffered unnecessarily. Different comments in the medical reports about pain and swelling that Ewing had in his jaw are martialed as further evidence that Defendants' failure to get Ewing to Cook County Hospital exacerbated his suffering. A closer look at the record heavily muddles these assertions.

In his response brief, Ewing writes that Funk testified that Schwarz "documented bifacial swelling and aching, and under plan, called for 'soft diet' and maybe 'ordered.'" Ewing misrepresents the record in this regard. Funk did not testify that Schwarz "called for" anything. Rather, Funk stated that while Schwarz did make a "soft diet" notation, that remark could not have been an order for Ewing go on a soft diet, which would have required the filing of a separate form. Instead, such a notation could stand for any number of things, including a reference to a possible discussion with Ewing about simply not chewing the hard food in prison diets. To the contrary of Ewing's contention, such a suggestion would be precisely in line with Funk's deposition regarding Cook County Hospital's instructions, which stated "[Y]ou may

6

follow a full liquid diet plus soft foods. Do not open your mouth wide or chew on solid foods." In any event, that the record is wholly devoid of elaboration on the "soft diet" demonstrates one aspect of its unhelpfulness.

Ewing's mention of Schwarz' notation of "ordered" similarly misrepresents the record. Funk notes that it appears Schwarz may have noted that all of Ewing's meds were "ordered," but due to the illegibility of the handwriting, he is unsure if that is precisely what the medical record states. At no point in his deposition does Funk tether the word "ordered" to Shwarz' notation of "soft diet." The record is clear on this point, contrary to the implication set forth in Ewing's response brief.

As to the various medical records' notations about swelling and pain, Funk suggests in his deposition that these symptoms are common for the sort of surgery Ewing had. Funk testified that "most dental conditions that people have treatment for in this environment…[are] associated with pain." Moreover, there is no elaboration in his testimony that the swelling and pain flowed from Defendants' inattentiveness or indifference. There are only readings from Funk into the record of apparent poorly handwritten scribbles onto Ewing's various medical charts. There is nothing in the record before the Court to suggest that Ewing's allegations of pain arose from or were exacerbated by Defendants's delay in getting him back to Cook County Hospital. Indeed, when Ewing did return to the hospital on October 7, the report indicated that his jaw fractures were "well-reduced."

7

The Court finds that the lone deposition testimony of a doctor only vaguely familiar with Ewing's situation would not be helpful to a jury in determining if the delay exacerbated his pain. If anything, Funk's testimony hints that the defendant medical employees acted to ensure Ewing received appropriate medical care and that his symptoms were not uncommon of a recent surgical patient.

"[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams*, 491 F.3d at 715. Lacking "verifying medical evidence" suggestive of a connection between Ewing's delay in returning to Cook County Hospital and his alleged suffering, Ewing's cause of action cannot proceed. An award of summary judgment is granted in favor of Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. It is so ordered.

_____

Dated: 11/1/2017

Charles P. Kocoras
United States District Judge